UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

REGIONS BANK,                                     )
        Plaintiff/counter-defendant,            )
                                               )
v.                                                )        No. 2:09-CV-57
                                               )        (GREER/SHIRLEY)
SoFHA REAL ESTATE, INC.,                          )
        Defendant/counter-plaintiff.            )

## MEMORANDUM AND ORDER

This breach of contract action is before the Court[1] on the motion of the

plaintiff and counter-defendant, Regions Bank ("Regions"), to dismiss the counterclaim of

the defendant and counter-plaintiff, SoFHA Real Estate, Inc. ("SoFHA"), to strike SoFHA's

affirmative defenses, and to strike SoFHA's jury demand, [Doc. 25]. SoFHA has responded,

[Docs. 27, 28], Regions has replied, [Doc. 29], and the matter is ripe for disposition. For the

reasons which follow, the motion will be GRANTED IN PART and DENIED IN PART.

## I.    Factual and procedural background

Regions is an Alabama banking corporation which has sued SoFHA, a Tennessee

corporation with its principal place of business in Johnson City, Tennessee, for breach of an

agreement dated July 27, 2006. Subject matter jurisdiction is invoked based on diversity of

---

[1]  The complaint in this matter was originally filed in the United States District Court for the Middle
District of Tennessee at Nashville. That court subsequently granted SoFHA's motion to transfer venue and
the action was transferred to the Eastern District of Tennessee.

citizenship and amount in controversy, pursuant to 28 U.S.C. § 1332, and is not at issue for purposes of the Court's resolution of the pending motion.

The following facts are alleged in the plaintiff's complaint: On July 27, 2006, SoFHA entered into an ISDA International Swap Dealers Association, Inc. form Master Agreement (the "master agreement"), with AmSouth Bank ("AmSouth"). Regions is the successor in interest by merger to AmSouth. The master agreement entered into is commonly referred to as an interest rate swap transaction.[2] On the same date as the master agreement, SoFHA and AmSouth entered into a "Confirmation" letter agreement confirming the terms of the transaction to which they had agreed.

On October 24, 2008, Regions gave notice to SoFHA that an event of default under Section 5(a)(i) of the master agreement had occurred by virtue of SoFHA's having failed to make payments when due under Section 2(a)(i) of the master agreement. The notice given on that date demanded payment in the amount of $184,354.23 before October 30, 2008. SoFHA did not make the demanded payment. On November 13, 2008, Regions gave notice to SoFHA that an event of default had occurred by virtue of SoFHA having failed to make payments when due under the master agreement. The November 13, 2008 notice gave notice that all transactions as defined in the master agreement between Regions and SoFHA

---

[2] As a general rule, swap agreements such as the one at issue in this case are complex and difficult to understand and explain. An explanation of the general aspects of these agreements can be found in *Thrifty Oil Co. v. Bank of America Nat'l Trust and Savings Ass'n*, 322 F.3d 1039 (9th Cir. 2003), and *Power & Telephone Supply Co. v. SunTrust*, 447 F.3d 923 (6th Cir. 2006). *See also BKB Properties v. SunTrust*, 2009 WL 529860 (M.D. Tenn. March 2, 2009) and *BKB Properties v. SunTrust,* 2009 WL 3169677 (M.D. Tenn. Sept. 25, 2009), memorandum opinions authored by Judge Trauger of the Middle District of Tennessee.

were terminated as of November 14, 2008. Then, on November 17, 2008, Regions gave an additional notice to SoFHA that all transactions were terminated and that the amount due Regions as a result of the early termination was $4,368,158.07.

SoFHA answered Regions' complaint and raised numerous affirmative defenses, including estoppel, lack of consideration, and that the contract is void as a wagering contract. Assuming the role of counter-plaintiff, SoFHA asserts causes of action against Regions for breach of contract, promissory fraud, negligence, misrepresentation, negligent misrepresentation, violation of the Tennessee Consumer Protection Act, rescission and unjust enrichment. SoFHA demands a jury trial.

The following facts, taken as true for the purposes of the pending motion, are taken from SoFHA's counter-complaint: During the year 2004, SoFHA, BRMMC Investment Company, Inc. ("BIC"), and Mountain States Health Alliance ("MSHA") engaged in discussions regarding the acquisition of certain real property from Med-Tech Properties for the development and construction of a medical office building in Johnson City, Tennessee. As a result of these discussions, SoFHA, BIC and MSHA entered into a development agreement for the construction of the medical office building which BIC would develop and construct for SoFHA. BIC and SoFHA began requesting proposals from banks for financing of the project and Regions was one of the banks which provided a proposal for financing the project. By letter dated June 26, 2006, Regions issued a loan commitment describing a construction loan to be made to BIC and a permanent loan to be made to SoFHA. SoFHA and BIC accepted the terms of the commitment letter on a timely basis.

In connection with the permanent loan to be made to SoFHA, Regions offered an interest rate swap agreement "to achieve an effective fixed rate for a portion or all of the loan amount." Regions represented in writing that the swap agreement would apply only to SoFHA's permanent loan and not to BIC's construction loan. The effect of the interest rate swap agreement was that SoFHA would be swapping the variable rate of interest for the permanent loan provided for in the commitment letter for some fixed rate of interest. Subsequent to the execution of the commitment letter of June 26, SoFHA and Regions executed the master agreement and related documents referred to in Regions' complaint (collectively the "swap agreement").

SoFHA had reserved the right to terminate its agreement with BIC and MSHA for the development of the medical office building at certain stages of the project based on, among other things, SoFHA's dissatisfaction with the estimated cost of the project. Regions was aware that SoFHA could terminate the agreement with BIC and MSHA. At some point during the design stage of the medical office building project, SoFHA notified Regions that it was considering terminating the development agreement, in an effort to ensure that doing so would have no adverse impact on Regions' loan commitment. SoFHA was assured by Regions' Regional Vice President, Grier Powers ("Powers"), that it would not do so. On or about October 25, 2006, SoFHA terminated its agreement with BIC and MSHA and, on the following day, informed Regions that it had terminated the agreement with BIC and MSHA and requested a meeting with Regions. SoFHA informed Regions that it would be developing the medical office building project itself, without the involvement of BIC, and

discussed with Regions the possible transfer of the commitment letter entirely to SoFHA to continue with the project funding as described in the June 26, 2006 commitment letter.

On October 27, 2006, SoFHA approached Regions regarding a short term loan to purchase the land for the medical office building and to reimburse BIC for costs incurred prior to termination of the agreement between SoFHA, BIC and MSHA and a loan for construction of the medical office building. In response, Regions made a number of proposals for financing the medical office building project, none of which were accepted by SoFHA. On February 13, 2007, Regions informed SoFHA of its intent to terminate the swap agreement should the loan not close by March 31. Throughout February, 2007, SoFHA and Regions engaged in various discussions concerning the upcoming swap termination and on March 6, 2007, Regions informed SoFHA that it was no longer obligated under the commitment letter because it had expired. SoFHA ultimately secured construction financing from a lender other than Regions.

## II. Analysis and discussion

### A. The motion to dismiss the counterclaims

#### 1. Applicable legal standard

As set forth above, SoFHA alleges causes of action for breach of contract, promissory fraud, negligence, misrepresentation, negligent misrepresentation, violation of the Tennessee Consumer Protection Act, breach of the implied covenant of good faith and fair dealing, rescission and unjust enrichment in its counter-complaint. Regions' motion to dismiss these counterclaims is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Regions seeks dismissal of the counter-complaint in its entirety.

The court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint–not to decide the merits of the case. It is well established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim.  Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*,— U.S. — , 129 S. Ct. 1937, 1950 (2009).  While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations.  *Id*.  The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Examining whether a complaint states a plausible

claim for relief is a "context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well–pleaded allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *see also Iqbal*, 129 S. Ct. at 1950 ("when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibility give rise to an entitlement to relief."). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S. Ct. at 1950.

### 2. The specific claims

#### a. Breach of contract

In Count I of SoFHA's counter-complaint, SoFHA alleges a breach by Regions of the terms of the June 26, 2006 commitment letter. More specifically, SoFHA alleges that Regions refused to honor the terms of the commitment letter as it relates to the permanent loan which, according SoFHA, Regions was obligated to make in an amount equal to the lesser of $21,000,000.00 or an amount which, when added to $1,000,000.00, equals 85% of the appraised value of the medical office building project or an amount which, when added to $1,000,000.00, equals 90% of the cost of the land and construction of the medical office building. SoFHA further alleges that Regions breached the commitment letter by imposing terms which were less favorable than those set forth in the commitment letter, including a shorter term and a higher interest rate. SoFHA alleges that, because of the breach

by Regions of the commitment letter, SoFHA lost the value of its bargain and other damages.

Regions argues in its memorandum in support of its motion that the commitment letter financing was conditioned on the bank making both the construction and permanent loans and that, by obtaining construction funding elsewhere, SoFHA relieved the bank from any further obligation under the commitment letter. Regions further argues that "to the extent that SoFHA's claims for breach of the commitment letter are premised on anything other than the commitment letter itself, they are barred by the statute of frauds." SoFHA responds to the factual allegations made by Regions, accuses Regions of shifting positions with respect to its obligations under the commitment letter and argues that an affirmative defense, such as a statute of frauds defense, is not appropriately addressed on the merits through a Rule 12(b)(6) motion.

As an initial matter, the parties, in their voluminous pleadings, never clearly address the issue of which state's law is to be applied in this case. At various places throughout their pleadings, both the plaintiff and defendant refer to both New York law and Tennessee law, without ever clearly addressing either the choice of law provisions agreed to by the parties in these written instruments or that Tennessee's choice of law rules require application of the substantive law of some other state. Because the parties have not clearly addressed the issue, as far as is necessary for the resolution of this motion, the Court will apply the substantive law of the state in which it sits. *i.e.*, Tennessee. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that a federal district court is required to apply the law of the state in which it sits in resolving questions of substantive law).

The elements of a breach of contract action under Tennessee law include: (1) existence of an enforceable contract (either oral or written), (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breach. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) *Lifecare Cntrs. of Amer., Inc. v. Charles Town Assoc's., Ltd. Partnership*, 79 F.3d 496, 514 (6th Cir. 1996). Although the parties spend a considerable amount of their briefing addressing the factual issues related to SoFHA's breach of the commitment letter claim, most of those arguments are irrelevant as to this motion. As noted above, this Court is required to construe the counter-complaint in the light most favorable to the counter-plaintiff, accept all well-pleaded factual allegations in the counter-complaint as true, and then determine whether they plausibly give rise to an entitlement to relief. Simply put, the counterclaim does just that. It alleges the existence of a contract, *i.e.* the commitment letter, it alleges multiple breaches of the contract and it alleges damages caused by the breach. In addition, these allegations are not simply conclusory, but are based on well-pleaded factual allegations. Whether SoFHA can prove its allegations or not is another matter which must await resolution either on a motion for summary judgment or at trial. Given the Court's limited role at this stage of these proceedings, the Court is constrained to find that SoFHA has pleaded all of the elements of a cause action for breach of the commitment letter in its counterclaim.

Furthermore, the Court will not decide the merits of Regions' claim as to an affirmative defense under the statute of frauds on this motion to dismiss. First of all, it is not clear from SoFHA's complaint that the statute of frauds even applies here, something

Regions appears to acknowledge because it premises its motion as somewhat anticipatory in that it asks the Court to find that the statute of frauds bars SoFHA's claims for breach of contract "to the extent that SoFHA's claims of breach of the commitment letter are premised on anything other than the commitment letter itself." A resolution of the statute of frauds claim is simply premature on this motion and is more appropriately resolved after discovery and the filing of motions for summary judgment.

For the above reasons, Regions' motion to dismiss SoFHA's breach of contract claim is DENIED.

### b.     Promissory fraud (fraud in the inducement)

In Count II of its counter-complaint, SoFHA alleges that it entered into the interest rate swap transaction in reliance on the terms of the permanent loan contained in the commitment letter. SoFHA further alleges that, despite the terms of the commitment letter referring to a variable interest rate, Regions induced SoFHA to enter into the commitment letter by promising that it would be able to "swap" the variable interest rate contained in the commitment letter for a fixed interest rate of 6.91%. In essence, SoFHA alleges that Regions, despite its inducements and the terms of the commitment letter, never believed itself obligated to make the permanent loan on the terms contained in the commitment letter and that it therefore fraudulently induced SoFHA to execute the documents which are at issue in this case. SoFHA alleges that its been damaged by Regions' fraudulent inducement and is entitled to damages in "an amount equal to the sums demanded by Regions," and rescission of the various contracts.

Regions argues that SoFHA has failed to allege the requisite elements of a claim for promissory fraud and has failed to state a claim for promissory fraud. Regions also once again argues that these claims are barred by the statute of frauds.

Under Tennessee law, the elements of a claim of promissory fraud are: (1) a promise of future conduct, (2) that was material, (3) made with the intent not to perform, (4) that plaintiff reasonably relied upon, and (5) to plaintiff's injury. *Noblin v. Christiansen*, 2007 WL 1574273 (Tenn. Ct. App. 2007) (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (1978)). Regions' argument here relates only to the third of these elements. Specifically, Regions argues that the allegations contained in SoFHA's counter-complaint that "Regions' words and conduct demonstrate its belief that it was not obligated to the long term commitment of the Permanent Loan terms contained in the Commitment Letter" is not a sufficient factual allegation with respect to the third element. The Court disagrees.

As SoFHA points out in its memorandum, intent not to comply with a promise is almost always a question of fact, making it inappropriate for resolution by a motion to dismiss under Rule 12(b)(6). Furthermore, intent is often difficult to prove by direct evidence and must be proved by circumstantial evidence, which often includes the "words and conduct" of the offending party. Dismissal of Count II of SoFHA's counter-complaint for this reason would be inappropriate under Rule 12(b)(6).

As noted above, Regions also argues that this claim is barred by the statute of frauds. For the same reasons dealing with that defense on the merits is

inappropriate as to SoFHA's breach of contract claim, it is also inappropriate here.[3]  For all these reasons, the motion to dismiss Count II of the counter-complaint is DENIED.

### c.  Negligence

In Count III of the counter-complaint, SoFHA makes a claim of negligence.  The counter-complaint alleges that Regions assumed the role of "calculation agent" for the interest rate swap transaction.  As such, SoFHA alleges, Regions owed SoFHA a duty to disclose certain material information and to respond to inquiries of SoFHA as they related to the transaction.  More specifically, SoFHA alleges that Regions had knowledge of data showing the then present mark-to-market value and that Regions breached a duty to disclose such material information to SoFHA with monthly or other periodic statements.  According to SoFHA, it did not otherwise have access to this data.

In addition, SoFHA alleges that Regions breached a duty to respond to inquiries by refusing to respond to certain questions from SoFHA which would allow SoFHA to make informed business decisions.  Specifically, in paragraphs 102, 103 and 104 of the counter-complaint, SoFHA alleges that Regions (1) "negligently, recklessly or intentionally failed to communicate any information to SoFHA regarding the SWAP including periodic account statements, the mark-to-market value of the SWAP, or Regions' stated position on the March 31, 2007, SWAP termination and its implications;" (2) "negligently, recklessly

---

[3]  The Court agrees with Regions that  parts of the counter-complaint of SoFHA are confusing. Although promissory fraud or fraud in the inducement has been pleaded here as a "stand alone" claim, it is not at all clear that it is a stand alone claim, rather than a defense to Regions' breach of contract claim. Because of this confusion, it is also quite unclear whether the statute of frauds has any application in this context.

or intentionally failed to correct, explain, or clarify its notice of the SWAP termination date on March 31, 2007;" and (3) "had information that SoFHA's position under the SWAP was deteriorating and failed to provide that information to SoFHA." [Doc. 24, ¶¶ 102-104]. SoFHA claims that, as a result of these negligent acts, SoFHA has suffered damages in an amount equal to the difference between what SoFHA would have owed on February 21, 2007, and the amount Regions now seeks to recover.

Regions' argument here is somewhat odd. Regions does not allege that SoFHA has not pled the required elements for a claim of negligence. Rather, Regions simply argues that the allegation that Regions owed a duty to SoFHA "is completely unsupported by the documents at issue and cannot form the basis for any claim, whether for negligence or otherwise." Although the Court is quite skeptical that the counterclaim states a cause of action for negligence, Regions does not develop the argument and cites absolutely no case law in support of its position. Under these circumstances, given the very limited nature of Regions' motion, the motion to dismiss Count III will be DENIED.

### d. Misrepresentation

In Count IV of the counter-complaint, SoFHA asserts a claim for misrepresentation. The allegations contained in paragraphs 107-118 of the counterclaim are somewhat confusing and certainly do not provide the "short and plain statement of the claim showing that the pleader is entitled to relief" contemplated by Rule 8. Fed. R. Civ. P. 8. As best the Court can tell, SoFHA claims that Regions misrepresented the termination date of the interest rate swap transaction and, combined with the negligence alleged in Count III of

the counter-complaint, "prevented SoFHA from taking action or making decisions that it may or could have taken or made to protect itself against the deterioration of its position."

The elements of a cause of action for misrepresentation under Tennessee law are:

> (1) The defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation related to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented material facts; and (6) the plaintiff suffered damage as a result of the misrepresentation.

*Metropolitan Government of Nashville & Davidson County v. McKinney*, 850 S.W.2d 233, 237 (Tenn. Ct. App. 1992). Factors relevant to the determination of the reasonableness of a plaintiff's reliance on a misrepresentation include: (1) the plaintiff's business experience and sophistication; (2) the existence of long standing business or personal relationships between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) specificity of the misrepresentation. *See State Bank v. Dean Witter Rental, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996).

Once again, Regions does not argue that SoFHA has not pleaded all of the elements of the cause of action. Regions' argument is that even if SoFHA's allegations are true, and they are assumed to be for the purpose of this motion, "SoFHA cannot demonstrate that it reasonably relied on any purported misrepresentation by Regions, since it was a sophisticated entity formed for the specific purpose of developing the subject

medical office building and affirmed in the Agreement that it 'had had the opportunity, independently of [Regions and Regions'] affiliates, officers, employees, and agents, to consult its own financial advisors and had determined that it is in [SoFHA's] interest to enter into the Agreement and any transaction and (B) it is capable of assuming and assumes the risks of any Transaction.'" [Doc. 26, pp. 11-12]. In essence, Regions claims that since Regions and SoFHA were both sophisticated parties dealing on equal terms with each other, reliance on a misrepresentation as to the termination date of the transaction is not reasonable. SoFHA's response to the motion does not appear to address the specific issue raised by Regions.

Because the issue is not raised by Regions, the Court will assume that the counterclaim, in Count IV, pleads all of the necessary elements for a cause of action of misrepresentation. On the issue raised, however, this Court agrees with Regions. Even accepting SoFHA's factual allegation that Regions misrepresented the termination date of the transaction as true, SoFHA pleads no facts which would show its justifiable reliance on such a misrepresentation. As Regions points out, nothing in the record suggests that SoFHA is not a sophisticated party, the complaint and counter-complaint establish that the negotiations were extended, SoFHA affirmatively acknowledged that it had the opportunity to consult its own financial advisors and had determined that the agreement was in its best interest and, as Regions also points out, there is no allegation by SoFHA that the documents themselves do not clearly set forth the termination date. Count IV of the counterclaim is DISMISSED.

### e.　　Negligent misrepresentation

In Count V of the counter-complaint, SoFHA asserts a cause of action for negligent misrepresentation, largely realleging the factual allegations made in connection with Counts III and IV of the counter-complaint. Paragraphs 119 through 129 of the counter-complaint set forth those allegations, and SoFHA alleges that it reasonably relied on Regions misrepresentations and omissions of material fact to its detriment and that the misrepresentations were made either intentionally, recklessly or negligently.[4] The elements of a cause of action for negligent misrepresentation are:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

Regions argues that SoFHA has not alleged any faulty information provided by Regions and, as it did with the prior claim, argues that SoFHA could not have reasonably relied upon the information. As with the prior claim, SoFHA does not specifically respond to the argument made by Regions with respect to the justifiable reliance element of the cause of action. For the same reasons set forth in the prior section, SoFHA's

---

[4]　The Court notes that SoFHA has alleged in both its counts for misrepresentation and negligent misrepresentation the alternative allegations that the misrepresentations were made "intentionally, recklessly, or negligently."

claim for negligent misrepresentation is DISMISSED.

### f.      Tennessee Consumer Protection Act

SoFHA's Tennessee Consumer Protection Act ("TCPA") claim is set out in paragraphs 130 through 142 of its counter-complaint.  In sum, those paragraphs allege that Regions engaged in unfair and deceptive acts in violation of the TCPA by (1) attempting to coerce SoFHA into loan terms different than those agreed upon in the commitment letter by misrepresenting the termination date of the interest rate swap transaction if the construction loan did not close by March 31, 2007; (2) wrongfully repudiating the commitment letter in March, 2007 in an effort to obtain more favorable terms; (3) taking contrary positions about the date of the expiration of  the commitment letter; (4) failing to respond to SoFHA's numerous inquiries regarding the transaction; (5) giving notice that the swap transaction was terminating and then renouncing the notice; and (6) failing to provide information as the calculation agent knowing that the information was both necessary and helpful to SoFHA.

Regions makes two arguments here.  First of all, Regions argues that this claim should be dismissed because the agreement provides that New York law applies rather than Tennessee law.  Secondly, Regions argues that even if Tennessee law applies, the transactions at issue in this case are exempt from its scope which provides that the provisions of the TCPA do not apply to "credit terms of a transaction."  Regions relies specifically on *Kleto v. AmSouth Bank*, No. 3:04-CV-243, 2005 WL 2573379 (E.D. Tenn. Oct. 12, 2005), (Phillips, J.).

SoFHA acknowledges that the agreement does contain a choice of law provision which provides that "[the SWAP] will be governed by and construed in accordance with the laws of the State of New York without reference to choice of law doctrine." This makes no difference, according to SoFHA, because not all of the deceptive acts complained of arise out of or relate to the swap and because the unfair and deceptive acts complained of in the counterclaim are prohibited under both Tennessee and New York law and New York law provides the same or substantially similar remedy to that available under the TCPA. SoFHA requests that the Court allow it to amend its counter-complaint to substitute a claim under New York law if the Court determines that the TCPA claim should be dismissed as having been foreclosed by the application of New York law.

Regions, not unsurprisingly, resists SoFHA's request for leave to amend to plead a cause of action under the New York statute because "the purported unfair and deceptive acts complained of are all belied by the plain terms of the parties' agreements" and "this [request to amend] is simply an effort to avoid the TCPA's one-year statute of limitations."

SoFHA clearly asserts its claims in Count VI of its counter-complaint under Tennessee State law, *i.e.*, the TCPA codified at T.C.A. § 47-18-101 *et seq*. SoFHA also acknowledges, as noted above, that its agreement with Regions contains a choice of law provision which requires the application of New York law. Although SoFHA alleges that the deceptive acts complained of are illegal under both Tennessee and New York law, that is not apparent from the counter-complaint. Because SoFHA clearly brings its alleged cause

of action in Count VI under Tennessee law, Count VI of the counter-complaint will be DISMISSED.

Because Regions has not yet filed an answer in this case and discovery has apparently not proceeded, SoFHA may, within ten (10) days of the date of this order, file an amended counter-complaint, setting forth its claims under New York law for deceptive acts and practices. Because of the voluminous nature of the pleadings which have been filed, SoFHA should not restate its claims with regard to the other counts but should set forth in a pleading which complies with Rule 8 its claim under New York law for deceptive acts and practices. Regions may then respond to that amendment by a motion to dismiss or may file an answer, as it chooses. In the meantime, however, the Court's decision to allow the amendment to the complaint will not relieve Regions of the obligation to answer the counter-claim as to the causes of action remaining after the Court's disposition of the motion to dismiss.[5]

## g. Breach of implied covenant of good faith and fair dealing (bad faith)

In Count VII of the counter-complaint, paragraphs 143 through 152, SoFHA alleges a breach of the implied covenant of good faith and fair dealing. Once again,

---

[5] This Court notes that the instant motion has been ripe for disposition for more than one year. The delay in the Court's resolution of the motion cannot be attributed to either of the parties, but rather is the result of the state of this Court's current docket, especially the very heavy docket of criminal cases now pending in this division, which has unavoidably delayed the resolution of the motion. The Court sincerely regrets the delay in resolution of the motion and the delay this has caused with respect to the preparation of the case for final disposition. The situation, however, simply could not be avoided; nevertheless, the Court apologizes to the parties for the delay in the resolution of this motion.

SoFHA relies on many of the same allegations made with respect to other causes of action it has asserted. Specifically, SoFHA argues that because the swap agreement was tied to the permanent loan, Regions was obligated to honor the terms of the permanent loan and wrongfully repudiated the commitment letter, stating that it had expired. The complaint alleges that Regions' refusal to honor the terms of the permanent loan set out in the commitment letter "deprived SoFHA of SoFHA's right to receive the benefits pursuant to the Commitment Letter, and the SWAP." SoFHA alleges bad faith on the part of Regions because Regions, according to SoFHA, relied on "the pretense that a change in the market conditions, clearly contemplated, permitted it to refuse to honor the commitment to make the Permanent Loan." This, SoFHA claims, is a violation of the duty of good faith and fair dealing implied in every contract. SoFHA also points to Regions' notice of termination and subsequent renunciation of that notice as a violation of the duty of good faith and fair dealing, as well as Regions' failure to provide information as requested by SoFHA and in its role as calculation agent.

Regions seeks dismissal of this count of the counter-complaint on the basis that there is no legally cognizable factual basis for any claim that Regions breached any implied covenant of good faith and fair dealing. Citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996), Regions argues that the covenant of good faith and fair dealing is breached only by an action not in accordance with the contracts terms.

The very nature of the argument raised by Regions raises factual disputes which are not appropriate for disposition through the pending motion. The Court

agrees with SoFHA that, viewing the facts in the light most favorable to SoFHA, the Court cannot, as a matter of law, dismiss Count VII of SoFHA's counterclaim. The Court notes, however, that Count VII is likely not an action separate and apart from the breach of contract claim set forth in Count I of the counter-complaint. That issue, however, will be left for a later day.

### h.     Rescission

In Count VIII of its counter-complaint, SoFHA claims that Regions materially breached the commitment letter by changing the terms and conditions for the permanent loan and that, to the extent damages are inadequate or difficult to assess, SoFHA is entitled to rescission of the agreement. Regions correctly argues that to the extent SoFHA's claim for rescission is premised upon another claim that should be dismissed, namely its claim for breach of the commitment letter, the claim for rescission should also be dismissed. Inasmuch as the Court has not dismissed the breach of contract claim related to the commitment letter, Count VIII of the contract will likewise not be dismissed and Regions' motion in this regard is DENIED.

Regions also argues that rescission is not available as a remedy here since damages are neither inadequate nor difficult to assess. Regions does not further develop the argument and it appears that such a determination could not be made absent factual development of the case through discovery. Regions' argument in this respect does not provide a basis for dismissal of Count VIII.

### i.     Unjust enrichment

SoFHA sets forth its claim for unjust enrichment in paragraphs 157 through 161, Count IX, of its counter-complaint. The essence of the claim is that Regions' failure to honor the terms of the commitment letter as to the permanent loan while at the same time enforcing the interest rate swap agreement confers a benefit upon Regions which would be unjust and inequitable for Regions to retain under the circumstances.

Regions argues that Count IX of the counter-complaint should be dismissed because it is simply a rephrasing of SoFHA's claim for breach of the commitment letter and does not state a separate claim upon which relief can be granted. SoFHA does not respond to Regions' argument.

The elements of an unjust enrichment claim are: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that would be inequitable for the defendant to retain the benefit without payment of the value thereof." *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Tennessee courts will impose a contractual obligation under an unjust enrichment theory where there is no contract between the parties or a contract has become unenforceable or invalid and the defendant will be unjustly enriched absent a quasi-contractual obligation. *Thompson v. American General Life and Acc. Ins. Co.*, 404 F.Supp.2d 1023, 1029 (M.D. Tenn.2005).

SoFHA has not pleaded its unjust enrichment claim as an alternative claim to the breach of contract claim. Based upon SoFHA's claims in this litigation, SoFHA

pleads no facts to suggest that it has conferred any benefit on Regions if there is no valid contract. Thus, this claim is, as Region argues, simply a restatement of the breach of contract claim. For this reason, Count IX of the counter-complaint is DISMISSED.

### B. Motion to strike affirmative defenses

As noted above, SoFHA raises four affirmative defenses in its answer to Regions' complaint. First, SoFHA alleges that the underlying agreements in this case are void under both Tennessee and New York law as wagering contracts. Second, SoFHA argues that Regions' action and recovery is barred by a failure of consideration in that SoFHA received no consideration in exchange for executing the agreement. As its third and fourth affirmative defenses, SoFHA argues that Regions' action and recovery are barred by the doctrine of estoppel. Regions argues in its motion that SoFHA's affirmative defenses are "insufficient defenses and should be stricken pursuant to Federal Rule of Civil Procedure 12f(2).

### 1. Applicable legal standard

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or upon the motion of a party "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.12(f). Because striking a portion of a pleading is a drastic remedy, motions under Rule 12(f) are generally disfavored and generally will not be granted unless it is "shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party. 5C Wright & Miller, *Federal Practice and Procedure Civil 3d* § 1380.

23

A motion to strike under Rule 12(f) is the primary procedure for objecting to an insufficient defense. *Id.* What constitutes an insufficient defense under Rule 12(f) depends upon the nature of the affirmative pleader's claim for relief and the particular defense that is in question. *Id.* § 1381. Even when technically appropriate and well founded, Rule 12(f) motions are often not granted in the absence of a showing of prejudice to the moving party. *Id.* It has been recognized, however, that if a defendant's affirmative defense cannot withstand a Rule 12(b)(6) challenge, the defense may be stricken as legally insufficient. *Williams v. Provident Inv. Counsel, Inc.*, 279 F.Supp.2d 894, 906 (N.D. Ohio 2003) (citing *Renalds v. S.R.G. Restaurant Group*, 119 F.Supp.2d 800, 802 (N.D. Ill. 2000) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

It should be noted at the outset that Regions does not argue that it is prejudiced in any way by allowing the case to go forward without a decision as to these affirmative defenses at this time. For that reason, the Court could deny summarily the motion to strike affirmative defenses. The Court will decline to do so, however, and will consider whether each of the affirmative defenses is "insufficient" as a matter of law.

### 2. Analysis

#### a. Wagering contract

SoFHA's affirmative defense in this regard is, as best the Court understands, that the agreement upon which the plaintiff brings this action is void "due to the lack of any underlying loan transaction between Regions and SoFHA." SoFHA claims that, in the absence of such a transaction, the agreement is "nothing more than a wagering contract

wherein the parties bet that the applicable interest rate will increase or decrease." Regions argues that the defense is insufficient under New York law because transactions involving future deliveries are only illegal if both parties intend at the time of contract that no delivery is to be made. Regions says Tennessee law is the same and because SoFHA has not alleged that the parties did not intend to engage in an interest rate swap to which the agreement would apply, the defense should be stricken.

Tennessee Code Annotated § 29-19-101 provides as follows:

> **29-19-101. Void Contracts. - -** All contracts founded, in whole or in part, on a gambling or wagering consideration, shall be void to the extent of such consideration.

T.C.A. § 29-19-101. Tennessee law makes it clear that it is the intention of the parties at the time the contract is made which is determinative with respect to whether or not a particular contract is a wagering contract and illegal. *See Palmer v. Love*, 18 Tenn. App. 579, 80 S.W.2d 100, 104 (Tenn. App. 1934) ("The vice which renders contracts or purchase or sale of cotton, grain, or other personal property to be delivered in the future, which are valid on their faces, wagering contracts and illegal, is the intention of both parties, when they are made, that they shall be settled and the obligations under them discharged by the payment of the differences between the contract and the market prices of the property at the respective times fixed in the contracts for their delivery").

New York law is apparently similar. Regions relies on the case of *In re Dana's Estate*, 206 Misc. 1038, 135 N.Y.S.2d 522 (N.Y. Sur. 1954). In that case, the New York court summarized the law as follows: "An agreement is not an illegal wagering

agreement merely because it provides for the purchase and sale of commodities for future delivery. It becomes illegal only if the parties ***intend*** at the time of making the contract that no delivery of the commodity shall be made but that settlement between them is to be effected on the basis of fluctuations in market price." *Id.* at 1043 (emphasis added).

Although this affirmative defense seems, on its face, to be far fetched, Regions' only basis for striking the defense is its allegation that SoFHA has not alleged that the parties did not intend not to engage in an interest rate swap. The Court disagrees. SoFHA clearly and unequivocally alleges that Regions never intended to engage in the interest rate swap and, by implication, that SoFHA intended to do so only if a permanent loan was made. Regions' motion to strike SoFHA's first affirmative defense is DENIED.

### b.     Lack of consideration

SoFHA's second affirmative defense is that Regions' action and recovery is barred by a failure of consideration in that SoFHA received no consideration for executing the alleged agreement. More simply put, SoFHA argues that without the permanent loan described in the commitment letter there is no consideration. Because the permanent loan was not made, SoFHA argues, there was no interest rate to swap and there has been a failure of consideration.

Regions, on the other hand, labels the failure of consideration defense as "absurd." Regions further argues that SoFHA declined to move forward with Regions as to the construction and permanent financing and that SoFHA had the right to use the interest rate swap agreement in connection with financing it obtained from a third party lender. Regions

does not argue, however, that it would have consented to such a transfer and the agreement requires the prior written consent of Regions for SoFHA to use the agreement in connection with third party financing.

Once again, this defense is not so insignificant and lacking of any factual dispute that, especially where no claim of prejudice is made by Regions, it should be stricken. The motion of Regions to strike the second affirmative defense of SoFHA is DENIED.

### c.    Estoppel

Regions sets forth its arguments as to striking both the third and fourth affirmative defenses in three sentences, the essence of which is that the affirmative defenses are barred by the statute of frauds. For the same reasons that the Court denied Regions' motion to dismiss the counterclaim with respect to statute of frauds issues, Regions' motion to strike the third and fourth affirmative defenses of SoFHA is DENIED.

### C.    Motion to strike jury demand

SoFHA's answer and counterclaim requests that a jury be empanelled to try this case. Regions moves to strike the jury demand based on the language of the schedule to the master agreement, which provides:

> **Wavier of jury trial.** Each party hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all rights it may have to trial by jury in respect of any proceedings arising out of or relating to this Agreement or any Transaction and acknowledges that it and the other party have been induced to enter into this Agreement by, among other things, these mutual waivers.

[Doc. 26, pp. 18-19]. Regions argues that this action, including SoFHA's counterclaim, is a

27

proceeding arising out of and relating to the agreement and clearly falls within the agreed upon waiver.

SoFHA acknowledges that parties may waive their right to a jury trial. SoFHA disingenuously argues, however, that the waiver bars a jury trial on Regions' complaint but that it does not bar a trial by jury on the issues raised in the counter-complaint. This Court agrees with Regions that both the claims raised by the complaint and the counter-complaint arise out of and are related to the agreements entered into by and between these parties and they have, by mutual agreement, waived a jury trial on either the complaint or the counter-complaint. Regions' motion to strike the jury demand is GRANTED.

## III.  Conclusion

For the reasons set forth herein, Regions' motion to dismiss SoFHA's counterclaim is GRANTED IN PART and DENIED IN PART; Regions' motion to strike affirmative defenses is DENIED; and Regions' motion to strike jury demand is GRANTED, [Doc. 25]. Regions should file its answer to the counter-complaint within the time provided in the Rules of Civil Procedure and the Clerk is DIRECTED to give notice to the parties of the date and time of a Rule 16 scheduling and case management conference. Prior to the scheduling conference, the parties must comply with the requirements of Federal Rule of Civil Procedure 26(f).

So ordered.

ENTER:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE