UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

REGIONS BANK, )
 )
    Plaintiff/Counter-Defendant, )
 ) No. 2:09-CV-57
 ) (GREER/SHIRLEY)
V. )
 )
SOFHA REAL ESTATE INC., )
 )
    Defendant/Counter-Claimant. )

**REPORT AND RECOMMENDATION**

    This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order of the District Court [Doc. 47] referring Plaintiff/Counter-Defendant Regions's Motion to Dismiss Amended Counterclaim [Doc. 41] to the undersigned for report and recommendation. For the reasons more fully stated below, the Court finds that the Motion to Dismiss is well-taken, and the Court **RECOMMENDS** that it be **GRANTED**.

**I.    BACKGROUND**

    The following facts are alleged in the Plaintiff's Answer and Counterclaim [Doc. 36] and Amended Counterclaim [Doc. 39][1].

    During the year 2004, Counter-Claimant SoFHA Real Estate, Inc. ("SoFHA"), BRMMC Investment Company, Inc. ("BIC"), and Mountain States Health Alliance engaged in discussions regarding the acquisition of Lot 17 of Med-Tech Park from Med-Tech Properties and the development and construction of a 115,000 square foot medical office building in Johnson City, Tennessee. The discussions resulted in SoFHA, BIC, and Mountain States Health Alliance entering

---

[1]The Amended Counterclaim incorporates by reference the factual allegations contained in the original Answer and Counterclaim.

into a development agreement for the construction of the medical office building pursuant to which BIC agreed to develop and construct the medical office building for SoFHA. [Doc. 24 at ¶ 23-24].

As part of the financing package for this project, SoFHA entered into an interest rate swap transaction on July 27, 2006. [Doc. 24 at ¶¶ 32-33, Doc. 1-1]. On the same date as the interest rate swap, SoFHA and Regions, though its successor in interest AmSouth, entered into a "Confirmation" agreement (hereinafter "the Commitment Letter"), confirming the terms of the transaction to which they had agreed, [Doc. 1-2].

In October 2006, SoFHA decided to terminate its development agreement with the other entities involved in the medical office building. [Doc. 24 at ¶ 41]. SoFHA told Regions of its intent to pursue the development project alone, and SoFHA approached Regions about acquiring the following: a short-term loan to purchase the land and reimburse BIC for its costs incurred prior to the termination of the development agreement and to place the initial steel order for the medical office building, a loan for the construction of the medical office building, and a permanent loan pursuant to the terms set forth in the Commitment Letter. [Doc. 24 at ¶ 45]. Regions proposed financing that SoFHA maintained was not as favorable as the terms contained in the Commitment Letter. [Doc. 24 at ¶ 46].

From October 2006 until February 2007, Regions proposed various alternative loan terms. [Doc. 24 at ¶ 46]. On February 13, 2007, Regions informed SoFHA that the interest rate swap would terminate if a loan did not close by the end of March 2007. [Doc. 24 at ¶ 48]. SoFHA alleges that it made further inquires regarding financing in March 2007, but on March 6, 2007, Regions informed SoFHA that it was no longer obligated under the commitment letter because it had expired. [Doc. 24 at ¶¶ 51-54]. SoFHA ultimately secured construction financing through another lender. [Doc. 24 at ¶ 57]. SoFHA alleges that Regions did not honor its commitment and, specifically, the terms of the permanent loan set out in the Commitment Letter. [Doc. 24 at ¶ 62].

In January 2009, Regions brought the instant action alleging breach of contract based upon an allegation of default.[2] In its original Answer and Counterclaim [Doc. 24], SoFHA alleged, *inter alia*, violation of the Tennessee Consumer Protection Act.

In a Memorandum and Order [Doc. 36] entered August 25, 2010, the District Judge dismissed SoFHA's claims under the Tennessee Consumer Protection Act, because the claims were brought under the laws of the State of Tennessee despite the fact that the swap agreement contained a choice of law provision requiring application of the laws of the State of New York. [Doc. 36 at 18-19]. The District Judge gave SoFHA ten days in which to file an amended counter-complaint setting forth its claims under New York law. [Doc. 36 at 18].

SoFHA filed its First Amendment to Counterclaim [Doc. 39] on September 7, 2010. On September 21, 2010, Regions filed its Motion to Dismiss Amended Counterclaim [Doc. 41]. SoFHA responded in opposition to the Motion to Dismiss on October 15, 2010, [Doc. 45], and Regions made its final reply in favor of its motion on October 21, 2010, [Doc. 46]. Thus, this motion is now ripe for adjudication.

## II.   POSITIONS OF THE PARTIES

In its Motion to Dismiss [Doc. 41], Regions argues that SoFHA's claim for relief based upon New York's consumer protection statute fails to state a claim upon which relief can be granted. Regions maintains that New York General Business Law § 349 does not apply to the transaction that is the subject of this suit. Thus, Regions moves that the claim be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2]In its Complaint [Doc. 1], Regions alleges that on October 24, 2008, Regions gave notice to SoFHA that an event of default under Section 5(a)(i) of the master agreement governing the interest rate swap. The event of default being that SoFHA had failed to make payments when due. [Doc. 1 at ¶ 8]. The notice given on that date demanded payment in the amount of $184,354.23 before October 30, 2008. [Doc. 1 at ¶ 8]. SoFHA did not make the demanded payment. On November 17, 2008, Regions notified SoFHA that all transactions were terminated and that the amount due to Regions as a result of the early termination was $4,368,158.07. [Doc. 1 at ¶ 10].

In its Memorandum of Law in Support of Motion to Dismiss [Doc. 42], Regions argues that the commercial transaction was not "consumer-oriented." Regions argues that the transaction is a complex transaction between experienced parties involving a large sum of money, not a standard consumer transaction. Regions, therefore, maintains that SoFHA's claim lacks an essential element required under § 349, and it should be dismissed.

SoFHA counters that the interactions at issue would mislead a reasonable consumer. SoFHA argues that interest rate swaps are common transactions and that the public is harmed if a lender is permitted to "behave in the manner set forth in the Counterclaim." [Doc. 45 at 4-5].

In its Reply to Response to Motion to Dismiss [Doc. 46], Regions reiterates its argument that the transaction at issue is not "consumer-oriented," supplying additional case law in support of its position.[3]

### III. ANALYSIS

Section 349 declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N. Y. General Business Law § 349 (McKinney) . The courts of New York have established that to prevail under § 349, a plaintiff must demonstrate that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." Denenberg v. Rosen, 71 A.D.3d 187, 194 (N.Y. App. Div. 2010). A plaintiff must demonstrate that the "acts or practices have a broader impact on consumers at large, in the sense that they are directed to consumers or potentially

---

[3] In its reply brief, Regions also argues that the Court should grant its motion because the alleged deception of SoFHA did not occur in New York. Regions did not include this occurrence argument in either its Motion to Dismiss [Doc. 41] or its Memorandum of Law in Support of Motion to Dismiss Amended Counterclaim [Doc. 42]. Thus, there is an issue regarding the ripeness and timeliness of this argument. However, because the Court finds that the Motion to Dismiss is well-taken based upon Regions's argument that the transaction was not consumer-oriented, the Court has not addressed either the merits or the timeliness of the occurrence argument.

affect similarly situated consumers." Corsello v. Verizon New York, Inc., 2010 WL 3583531 (N.Y. App. Div. Sept. 14, 2010).

The cases applying § 349 do not support finding that the transaction at issue in this case is "consumer-oriented." For example, other courts who have examined the case law on point have found no cases finding in favor of a corporate consumer. See, e.g., EJ Footwear, LLC, v. Excelus Health Plan, Inc., 2006 WL 2265463, at *8 (M.D. Tenn. Aug. 8, 2006) (noting that the court could find no case in which a court has found liability in favor of a corporate consumer under § 349). The fact that SoFHA is a corporation is not dispostive on the issue of consumer orientation, but where corporations are involved in large-scale transactions that are not of the type marketed to consumers, a claim under § 349 fails. See New York Univ. v. Continental Ins., Co., 662 N.E. 2d 763 (N.Y. 1995) (finding a transaction was not consumer-oriented because it involved a university and a large insurance company transacting a non-standard policy with premiums in excess of $55,000 and coverage of $10 million).

Moreover, courts have consistently held that transactions that are unique to the parties do not constitute "consumer-oriented" claims under § 349. See Biancone v. Bossi, 24 A.D.3d 582, 583 (N.Y. App. Div. 2005) (finding that the lower court erred by not granting a motion to dismiss where "the plaintiffs based their cause of action on a private contract that is unique to the parties, rather than upon conduct that affects consumers at large"); see also Korn v. First UNUM Life Ins. Co., 277 A.D.2d 355, 356 (N.Y.App. Div. 2000)("Since the complaint essentially alleges a private contract dispute over policy coverage that is unique to the parties, rather than conduct that affects consumers at large, the complaint fails to state a cause of action pursuant to General Business Law § 349.")

In this case, the parties were both commercial entities. They entered into an agreement for a rate swap on a notational amount of $21,000,000, [Doc. 1-2 at 2]. SoFHA has directed the Court to no evidence that this type of transaction is or was marked to consumers or used by consumers, nor has SoFHA offered any factual allegations in support of its statement that these transactions are "common." Instead, the facts alleged in SoFHA's counterclaim indicate that this was a unique

transaction molded by the parties to their specific needs. Further, the extremely large amounts of capital involved in this transaction undermine SoFHA's contention that this transaction was "consumer-oriented."

Thus, taking SoFHA's allegations as true, the Court finds that SoFHA has failed to state a claim upon which relief can be granted, because it has failed to demonstrate that the transaction at issue in this case was "consumer-oriented," as required by § 349.

## IV. CONCLUSION

Accordingly, the Court finds that Regions's Motion to Dismiss Amended Counterclaim [Doc. 41] is well-taken, and the Court **RECOMMENDS**[4] that it be **GRANTED**.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).